IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

**STACEY LEE BATES,**

    **Plaintiff**

    v.                              **CASE NO.: CV-09-01573-IPJ-NW**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This court has jurisdiction under 42 U.S.C. § 405. The plaintiff is seeking reversal without remand of the Commissioner's decision. All administrative remedies have been exhausted.

## PROCEDURAL HISTORY

Plaintiff protectively filed a Title II application for a period of disability and disability benefits on December 8, 2006, alleging disability beginning April 30, 2006 (R. 41-45). Plaintiff also protectively filed a Title XVI application for supplemental security income on December 28, 2006, also claiming disability beginning April 30, 2006 (R. 388-399). These claims were denied initially on April 3, 2007 (R. 27-31).

On July 6, 2007, the plaintiff requested a hearing before an administrative

law judge (ALJ) (R. 14). The ALJ denied her claim on August 26, 2008 (R. 11-22). Plaintiff requested review by the Appeals Council, which denied her request on June 10, 2009 (R. 6-8). The plaintiff thereafter filed a complaint in this court.

## STATEMENT OF FACTS

Plaintiff Stacey Lee Bates was born on April 12, 1980 and has an eighth-grade education (R. 41, 72). She has past relevant work as a sewing machine operator, cashier, cook, painter, and house cleaner (R. 74-79). Plaintiff alleges disability beginning April 30, 2006 because of seizures, neck pain, lower back pain, muscle spasms, anxiety, and depression (R. 66). Plaintiff's neck and back pain and muscle spasms stem from whiplash she suffered in January 1999; her depression is due to molestation she suffered as a child (R. 66).

Plaintiff's medical records show 41 visits to her primary care physician, Dr. Jeffrey Long, between September 15, 2005, and August 20, 2008 (R. 290-303; 409-435). Often, these visits concerned only medication refills (R. 290, 292, 300, 302, 422, 425, 427, 432, 434, 435). At other times, however, the plaintiff visited Dr. Long for back pain (R. 303, 410, 417, 418, 430); insect bites (R. 296, 411, 413, 414, 429); nausea and vomiting (R. 409, 415, 423, 424); and coughing (R. 297, 409, 423, 426, 428). The plaintiff discussed her seizures with Dr. Long four times: in February 2006, May 2006, July 2006, and April 2008 (R. 294, 295, 299, 419).

Meanwhile, the plaintiff's medical records show eight visits to the Lakeland Community Hospital emergency room for seizures between February 2006 and October 2006 (R. 189, 204, 216, 223, 232, 239, 246, 262). On four of these occasions — February 2, 2006; May 28, 2006; July 7, 2006; and October 25, 2006 — the plaintiff had admitted to missing or was suspected to have missed a dosage of her seizure medication prior to suffering the seizure (R. 189, 204, 216, 262). Testing at the emergency room established that the plaintiff's seizure medication was below therapeutic levels on six occasions in 2006: February 1 (R. 267); April 8 (R. 243); May 24 (R. 227); May 28 (R. 220); July 7 (R. 213); and October 25 (R. 93). Three outside laboratory reports show the plaintiff's seizure medication to be outside of therapeutic levels: below therapeutic levels on March 3, 2006 (R. 310), slightly below therapeutic levels on April 7, 2006 (R. 309), and well above therapeutic levels on April 20, 2006[1] (R. 308).

The plaintiff's records also show multiple seizures preceding many of her emergency room visits. The February 1, 2006 record noted that the plaintiff was "seen in Winfield ER 1/7/06" for a seizure and had also suffered two seizures prior to arriving at the emergency room (R. 264). The February 27, 2006 record noted that the plaintiff had reported five seizures since November 2005 (R. 246). The

---

[1]This specimen was collected the day before the plaintiff's emergency room visit on April 21, 2006; testing at the emergency room on April 21 showed that the plaintiff's medication was at therapeutic levels. (R. 227).

May 24, 2006 record shows multiple seizures over the 12-hour period prior to the plaintiff's arrival at the emergency room and another seizure in the emergency room (R. 223). The May 28, 2006 record showed a seizure prior to arrival and another seizure in the emergency room lobby (R. 216). The July 7, 2006 visit showed two seizures prior to the plaintiff's arrival and another three-minute seizure in the emergency room (R. 205-206). The October 25, 2006 record also noted two seizures prior to the plaintiff's arrival (R. 191).

    Plaintiff's records show no further emergency room visits for seizures after October 2006, but plaintiff's testimony at her hearing establishes that as of August 2008, she suffered "usually about two [seizures] a week" (R. 471). Plaintiff further testified that her doctor "said don't let it go over five minutes" (R. 471). Nonetheless, although plaintiff returned to Dr. Long's office monthly for prescription refills, she only explicitly mentioned suffering seizures once, on April 15, 2008 (R. 419). During two other visits for medication refills (in July and August 2007), the word "seizures" appears in the diagnosis field of the chart (R. 431, 432).

    Plaintiff first reported neck and back pain to Dr. Long in September 2005 and received treatment that included medication (R. 303). She reported neck pain again in October 2005 and December 2005 and received similar treatment (R. 301, 302). Aside from a report of chronic neck pain during an emergency room visit in

4

May 2006 (R. 225), the plaintiff did not mention back pain again until March 2007 (R. 435).² Between March 2007 and August 2008, the plaintiff visited Dr. Long eight times for back pain, and each case was treated with medication (R. 410, 417, 418, 420, 423, 430, 434, 435).

Plaintiff also discussed her depression and anxiety with Dr. Long 17 times between September 2005 and August 2008, and each time she received treatment that included medication (R. 291, 292, 293, 295, 298, 300, 301, 302, 303, 410, 418, 422, 427, 428, 431, 433, 435). On two separate occasions in 2005 and 2006, the records note that the medications effectively treated the plaintiff's anxiety (R. 291, 303). A psychological evaluation in March 2007 determined that the plaintiff was moderately limited in general functionality and would have a significantly limited ability to interact with both the general public and her coworkers and supervisors (R. 315).

Evidence submitted at the time of the plaintiff's hearing did not include medical records from Dr. Long for the period between March 2007 and August 2008 (R. 407-435). Also missing were records from Lakeland Community Hospital for the period between May 2007 and August 2008 (R. 436-449). At the August 14, 2008 hearing, the ALJ stated that he would leave the record open for

---

²Although the medical records include a June 2006 radiology report showing lumbar scoliosis, this record belongs to a 52-year-old woman named Brenda Cothrum and not the plaintiff. (R. 305).

5

14 days and review the new evidence before making a final decision (R. 485). Twelve days later, on August 26, 2008, the ALJ issued his decision without considering the new evidence (R. 14-22). The Appeals Council received and considered this additional evidence before denying the plaintiff's request for review (R. 6-9).

## STANDARD OF REVIEW

This court's review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229 (1938)). Evidence considered by the Appeals Council becomes part of the administrative record for purposes of judicial review even when the Appeals Council denies review. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1068 (11th Cir. 1994). While judicial review of the Commissioner's factual findings is limited to the substantial evidence standard, the court reviews the Commissioner's legal decisions de novo. *See Passopulos v. Sullivan*, 976 F.2d 642, 645 (11th Cir. 1992).

## ANALYSIS

In this case, the ALJ found that the plaintiff suffered from the severe impairments of a seizure disorder, post traumatic stress disorder, an anxiety disorder, and a depressive disorder. (R. 16). The ALJ found, however, that none of these were severe enough to meet or medically equal, either singly or in combination, one of the impairments found in 20 C.F.R. 404, Subpart P, Appendix 1 (R. 17). In particular, the ALJ determined that the plaintiff's seizure disorder was well-controlled with medications, that her medical limitations were moderate based on successful conservative treatment by her physician, and that her back pain was successfully managed with conservative treatment and was so infrequently reported as to call any alleged limitations into question (R. 19-21).

Plaintiff argues that the ALJ's failure to hold the record open for 14 days and consider the evidence of further records from the treating physician and records from Lakeland Community Hospital was in error. The Commissioner argues that even if the ALJ had received the later evidence, he could have properly rejected the further medical evidence for good cause. Such "'good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhardt*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125

F.3d 1436, 1140 (11th Cir. 1997)). Furthermore, "[w]hen electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.*

While the ALJ may properly reject the additional records and medical source opinion for good cause, he may not do so without clearly articulated reasons for the exclusion. Although he informed the plaintiff that he would hold the record open for 14 days (R. 465, 485), the ALJ issued his decision after only 12 days (R. 22). In doing so, he not only refused to consider but also failed to receive the additional records, and nothing in the opinion articulates a reason for this failure to consider the new evidence.

In fact, the ALJ's decision indicates that additional medical records would be necessary to establish the plaintiff's disability. The ALJ specifically noted the insufficiency of the record on the plaintiff's back pain (R. 20), further occurrences of which were established in the additional records (R. 410, 417, 418, 420, 423, 430, 434, 435). The ALJ also noted the plaintiff's failure to report seizure activity after 2006 (R. 20), a conclusion that is directly contradicted by the additional records (R. 419, 431, 432). Even if he could show good cause for the refusal to consider these new records, the ALJ failed to clearly articulate reasons for the exclusion.

Remand for consideration of new evidence is appropriate when "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and

probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (citing *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985)). Because these standards have been met in this case, remand is appropriate.

The evidence requested but not considered by the ALJ includes treatment records for the period between March 2007 and August 2008 and a Medical Source Opinion by Dr. Long based on his treatment of the plaintiff (R. 407-449). The treatment records the ALJ considered only reach through 2006 and do not include any medical source opinions from treating physicians. The new evidence is, therefore, new, noncumulative evidence that should be considered upon remand.

Furthermore, this new evidence presents a reasonable possibility that it would change the administrative result. The ALJ's opinion noted, in particular, the scarcity of the record on the issue of the plaintiff's back pain (R. 20). The new evidence establishes further occurrences of the plaintiff's back pain that informed Dr. Long's Medical Source Opinion (R. 410, 417, 418, 420, 423, 430, 434, 435). The new evidence also establishes plaintiff's further reports and discussions of seizures (R. 419, 431, 432), another area of the record that the ALJ found lacking (R. 20). These treatment records and the Medical Source Opinion constitute

material evidence that should be considered upon remand.

Finally, there is good cause for the failure to submit the evidence at the administrative level. At the hearing on August 14, 2008, the ALJ twice informed the plaintiff that he would hold the record open for additional evidence for 14 days (R. 465, 485). The new evidence shows that Dr. Long completed his Medical Source Opinion on August 17, 2008 (R. 408) and that the plaintiff's most recent examination at Lakeland Community Hospital took place on August 20, 2008 (R. 436). This evidence did not exist at the time of the administrative hearing, and therefore there is good cause for the failure to submit it prior to the administrative hearing. *See Cannon v. Bowen*, 858 F.2d 1541,1546 (11th Cir. 1988); *Cherry v. Heckler*, 760 F.2d 1186, 1992 (11th Cir. 1985).

Moreover, although the ALJ had informed the plaintiff that he would hold the record open for 14 days — that is, until August 28, 2008 — he in fact closed the record and issued his decision two days early, on August 26, 2008 (R. 20). This establishes further good cause for plaintiff's failure to submit the new evidence during the administrative period. Plaintiff did not unreasonably procrastinate in obtaining the necessary evidence. Instead, the ALJ imposed a deadline for the submission of new evidence and then arbitrarily ignored his own deadline in issuing the decision. Because the ALJ did not allow the plaintiff the full period for submission of new evidence, good cause exists for the failure to

submit the evidence. Remand for consideration of new evidence is therefore both appropriate and necessary.

## CONCLUSION

Because the ALJ failed to consider the additional medical records, this court reverses this case and remands this case to the ALJ for consideration of the new evidence, further development of the record if necessary, and application of the proper legal standards.  The court shall so rule by separate Order.

**DONE** and **ORDERED** this the 28th day of April, 2010.

                                                INGE PRYTZ JOHNSON
                                                U.S. DISTRICT JUDGE